## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

RANDY SPITZ, an individual, as Assignee    )
of NANCY AGUILAR, an individual, and    )
REAL TRUCKING, INC., a corporation,    )
        )
    Plaintiff,    )
        )     No. 21 C 1044
    v.    )
        )     Judge Sara L. Ellis
STARR INDEMNITY & LIABILITY    )
COMPANY, INC., a corporation,    )
        )
    Defendant.    )

## OPINION AND ORDER

Plaintiff Randy Spitz, as assignee of Nancy Aguilar and Real Trucking, Inc. ("RTI"),

brings this suit against Defendant Starr Indemnity & Liability Company, Inc. ("Starr"), alleging

Starr breached its duty to settle an underlying lawsuit Spitz brought against Aguilar and RTI

(Starr's insured) to recover damages caused by Aguilar in a car crash (the "Underlying

Lawsuit"). Specifically, Spitz alleges: (1) Starr breached its duty to settle the claims against

Aguilar and RTI in good faith during pretrial negotiations with Spitz; (2) in the alternative, Starr

was negligent in not negotiating a settlement within the policy limits; and (3) Starr was vexatious

in settlement negotiations and unreasonably delayed payment of the policy, entitling Spitz to

damages under 215 Ill. Comp. Stat. 5/155. Starr now moves to dismiss the complaint pursuant to

Federal Rule of Civil Procedure 12(b)(6), arguing that (1) the failure to settle claims are unripe

because appeals in the Underlying Lawsuit are ongoing and (2) the Section 155 claim is

improper because Section 155 does not apply to failure to settle claims. Because the judgment in

the Underlying Lawsuit is not yet final and therefore the failure to settle claims are not yet ripe

for adjudication, the Court dismisses these claims without prejudice. The Court also dismisses

Spitz's Section 155 claim without prejudice because additional allegations may allow Spitz to sufficiently plead that the statute entitles him to damages.

## BACKGROUND[1]

RTI, an Illinois company, had a liability insurance policy with Starr. The policy provided, among other things, $1 million of liability coverage for damages that result from a car crash and required that Starr handle litigation and settlement negotiations resulting from any liability created by a company employee. On February 23, 2016, Aguilar, an RTI truck driver, crashed into Spitz's car. Spitz sustained serious injuries in the crash and required extensive medical care thereafter. Aguilar was acting as an agent of RTI at the time of the crash, rendering RTI vicariously liable for her conduct.

Spitz brought the Underlying Lawsuit against Aguilar and RTI in Oklahoma state court to recover damages for his injuries. Ahead of the trial, Spitz made numerous offers to settle the lawsuit for an amount within the $1 million policy limit, but the parties did not reach an agreement. The subsequent trial resulted in a jury award of over $2.2 million in damages to Spitz, a sum that exceeds the limit in RTI's policy with Starr. Therefore, Aguilar and RTI face approximately $1.2 million in personal liability. Starr, on Aguilar and RTI's behalf, appealed the judgment in the Underlying Lawsuit. In Oklahoma, a party can post a supersedeas bond to stay execution of a judgment pending appeal. Okla. Stat. Ann. tit. 12, § 990.4 (West 2021). After Starr's attempts to lower the bond amount, the supersedeas bond was set at $2.7 million. The parties have not posted the bond, but the appeal remains pending before the Oklahoma Court of

---

[1] The Court takes the facts in the background section from Spitz's complaint and exhibits attached thereto and presumes them to be true for the purpose of resolving Starr's motion to dismiss. *See Phillips v. Prudential Ins. Co. of Am.*, 714 F.3d 1017, 1019–20 (7th Cir. 2013). The Court "may also take judicial notice of matters of public record." *Orgone Cap. III, LLC v. Daubenspeck*, 912 F.3d 1039, 1043–44 (7th Cir. 2019).

Civil Appeals. Because Starr refused to pay the excess judgment, Aguilar and RTI assigned their rights to sue Starr for failure to settle the Underlying Suit within the policy limits to Spitz.

## LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint, not its merits. Fed. R. Civ. P. 12(b)(6); *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). In considering a Rule 12(b)(6) motion to dismiss, the Court accepts as true all well-pleaded facts in the plaintiff's complaint and draws all reasonable inferences from those facts in the plaintiff's favor. *Kubiak v. City of Chicago*, 810 F.3d 476, 480–81 (7th Cir. 2016). To survive a Rule 12(b)(6) motion, the complaint must assert a facially plausible claim and provide fair notice to the defendant of the claim's basis. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Adams v. City of Indianapolis*, 742 F.3d 720, 728–29 (7th Cir. 2014). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

## ANALYSIS

### I. Ripeness of Failure to Settle Claims

First, Starr argues that Spitz's failure to settle claims are not ripe while an appeal is pending in the Underlying Lawsuit because an appeal outcome in Aguilar and RTI's favor would render an essential element of Spitz's claims in this suit moot. In response, Spitz argues that Starr's failure to post the supersedeas bond rendered the judgment in the Underlying Lawsuit enforceable against Aguilar and RTI while the appeal is pending and therefore, the failure to settle claim is ripe for adjudication. For a claim to be ripe, an actual injury must have occurred that results in a valid case or controversy. *Church of Our Lord & Savior Jesus Christ v. City of*

*Markham*, 913 F.3d 670, 676 (7th Cir. 2019) ("The ripeness doctrine arises out of the Constitution's case-or-controversy requirement, as claims premised on uncertain or contingent events present justiciability problems."); *Lehn v. Holmes*, 364 F.3d 862, 867 (7th Cir. 2004) ("Ripeness doctrine is based on the 'central perception . . . that courts should not render decisions absent a genuine need to resolve a real dispute.'" (alteration in original) (citation omitted)). In evaluating a claim for ripeness, courts consider "both the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." *Sweeney v. Raoul*, 990 F.3d 555, 560 (7th Cir. 2021) (citation omitted). "Plain and simple, ripeness is 'peculiarly a question of timing.'" *Id.* (citation omitted). Courts must avoid decisions that are merely advisory in nature that "would [inappropriately] consume judicial time in order to produce a decision that may turn out to be irrelevant." *Lear Corp. v. Johnson Elec. Holdings Ltd.*, 353 F.3d 580, 583 (7th Cir. 2003). If a claim is unripe, the Court must dismiss it because "[f]ederal courts lack jurisdiction to consider an unripe claim." *Kathrein v. City of Evanston*, 636 F.3d 906, 915 (7th Cir. 2011); *see Med. Assur. Co. v. Hellman*, 610 F.3d 371, 375 (7th Cir. 2010) (noting dismissal without prejudice was correct remedy for unripe duty-to-indemnify claim as opposed to staying the claim pending resolution of the underlying state court proceedings). Because Spitz has failed to allege an actual injury and any decision on his failure to settle claims at this time would be advisory in nature, the Court dismisses the claims without prejudice.

Spitz alleges that Starr breached its duty to settle the Underlying Lawsuit in good faith and/or with ordinary care towards the interests of Aguilar and RTI. "An insurer's duty to settle in good faith on behalf of its insured, which is well-settled in Illinois, arises from the covenant of good faith and fair dealing implied in an insurance contract." *Iowa Physicians' Clinic Med.*

*Found. v. Physicians Ins. Co. of Wis.*, 547 F.3d 810, 812 (7th Cir. 2008) (citations omitted).  The duty "arises because the policyholder has relinquished defense of the suit to the insurer," *Cramer v. Ins. Exch. Agency*, 174 Ill. 2d 513, 525 (1996), and "yet the insurer's interest in defeating the claim may conflict with the insured's interest in avoiding a judgment that exceeds the amount of the policy limits," *Voyles v. Sandia Mortg. Corp.*, 196 Ill. 2d 288, 296 (2001).  Therefore, the duty "does not arise until a third party demands settlement within policy limits." *Haddick v. Valor Ins.*, 198 Ill. 2d 409, 417 (2001).  If an insurer breaches the duty, it must pay the entire judgment, irrespective of the policy limit. *Cramer*, 174 Ill. 2d at 525.  To bring a claim for breach, "the policyholder must establish: '[1] the duty to settle arose; [2] the insurer breached the duty; and [3] the breach caused injury to the insured.'"  *Surgery Ctr. at 900 N. Mich. Ave., LLC v. Am. Physicians Assurance Corp.*, 922 F.3d 778, 785 (7th Cir. 2019) (alterations in original) (quoting *Haddick*, 198 Ill. 2d at 416).

While there is no Seventh Circuit precedent for when alleged breaches of the duty to settle are ripe for adjudication, other courts have addressed the question.  In the Eleventh Circuit, a claim for failure to settle in good faith is not ripe until the underlying judgment that created the insured's liability in excess of the policy limit is final.  *See, e.g.*, *Romano v. Am. Cas. Co. of Reading*, 834 F.2d 968, 970 (11th Cir. 1987) (upholding dismissal of a failure to settle action because the appeal of the underlying judgment that created excess liability was ongoing).  These courts reason that because a bad faith failure to settle claim is contingent on liability in excess of the policy limit, the claim is not ripe until that liability is final.  *See, e.g.*, *Rohee v. Garrison Prop. & Cas. Ins. Co.*, No. 14-cv-81037, 2014 WL 12479277, at *1–2 (S.D. Fla. Dec. 17, 2014) (dismissing bad faith failure to settle claim without prejudice as unripe because the final judgment of damages, an essential element of the claim, had not yet been determined).

At least two courts within the Seventh Circuit have followed this reasoning. *See, e.g.*, *Dennerline v. ProNational Ins. Co.*, No. 05-cv-1564, 2006 WL 8446411, at *2 (S.D. Ind. Apr. 17, 2006) (holding that because the underlying case remained pending and therefore the insured could not yet establish the excess judgment, the insured's failure to settle claim was not ripe). Starr points to *West Side Salvage, Inc. v. RSUI Indemnity Co.*, where a court in the Southern District of Illinois held that an alleged failure to settle claim was unripe because the underlying case remained on appeal and therefore, the excess liability, which formed the basis for the failure to settle claim, was not yet final. No. 13-cv-0363, 2014 WL 12768921, at *4 (S.D. Ill. Mar. 31, 2014) ("[The insured] would be stripped of an 'essential element' of its failure to settle claim should any damages in excess of its . . . policy be reversed. The basis of the instant case would dissipate upon such reversal. . . . A judgment here would be based on contingent events that may or may not occur.").

A related question is when a bad faith failure to settle claim accrues for statute of limitations purposes. *See id.* at *3 n.2 ("[T]he policies underlying accrual and ripeness are similar."); *Vanderloop v. Progressive Cas. Ins. Co.*, 769 F. Supp. 1172, 1174 (D. Colo. 1991) (noting, when discussing when a bad faith failure to settle claim accrues, "[t]he key question here is when the bad faith claim ripened into a viable cause of action to start the statute of limitations' running"). Following the same reasoning as the courts which have held that bad faith failure to settle claims are not ripe until the underlying judgment is final, many courts have held that bad faith failure to settle claims do not accrue until the underlying judgment that created the excess liability is final.[2] *See, e.g.*, *Torrez v. State Farm Mut. Auto. Ins. Co.*, 705 F.2d 1192, 1202 (10th

---

[2] Spitz asks the Court to preclude Starr from raising a statute of limitations defense upon Spitz's refiling of the claims after exhaustion of the appeal in the Underlying Lawsuit if the Court dismisses the failure to settle claims without prejudice. However, in its reply, Starr acknowledges that Spitz's failure to settle claims have not yet accrued for statute of limitation purposes and has asserted that it "will not take the

Cir. 1982) (holding that a bad faith failure to settle claim only accrues when the judgment of excess liability in the underlying case is final); *Am. Mut. Liab. Ins. Co. of Bos. v. Cooper*, 61 F.2d 446, 448 (5th Cir. 1932) (holding that insured's bad faith failure to settle action accrued when highest court affirmed the judgment, not when insured contributed to supersedeas bond, because insured "could not have sued before the suit against him was finally determined"); *Connelly v. State Farm Mut. Auto. Ins. Co.*, 135 A.3d 1271, 1276 (Del. 2016) ("The majority rule of courts in other states is that a bad-faith failure-to-settle claim accrues when the excess judgment becomes final and non-appealable."); *Taylor v. State Farm Mut. Auto. Ins. Co.*, 913 P.2d 1092, 1095–96 (Ariz. 1996) ("Those jurisdictions that have addressed the issue have held that an insured's claim for its insurer's bad faith refusal to settle accrues when the excess judgment in the underlying case becomes final.").

In response to this precedent, Spitz argues that claims for breach of the duty to settle in good faith can be ripe for adjudication prior to the exhaustion of appeals when the judgment in excess of the policy limit is enforceable against the insured during the pendency of the appeal. For example, in *Belanger v. Geico General Insurance Co.*, the Fifth Circuit found that because the insured appealed the underlying excess judgment in such a way that "it was fully enforceable during the appeals process" under Louisiana law, the insured's bad faith failure to settle claim had accrued for statute of limitations purposes because the insured was legally obligated to pay the excess judgment despite the pending appeal. 623 F. App'x 684, 689 (5th Cir. 2015). Similarly, in *Bergeson v. Dilworth*, the Kansas District Court held that an insured's bad faith action was ripe for adjudication despite the pending appeal of the underlying lawsuit because under Kansas law, given that the insurer had failed to post a supersedeas bond, the court could

---

inconsistent position in later pleadings that the excess verdict claim has already accrued." Doc. 14 at 4. Therefore, the Court need not address this issue.

proceed with the proposed garnishment proceeding to enforce the excess judgment while the appeal remained pending. 749 F. Supp. 1555, 1559–60 (D. Kan. 1990) ("[U]nder Kansas law a judgment becomes 'effective' before appeal, and plaintiff may proceed with garnishment absent appropriate supersedeas bond." (citing *Cansler v. Harrington*, 643 P.2d 110, 115 (Kan. 1982))).

Spitz argues that his claims are similarly ripe because Starr's failure to post a supersedeas bond allows Spitz to execute the underlying judgment against Aguilar and RTI while the appeal of the Underlying Lawsuit remains pending. However, Spitz fails to explain how the law in Oklahoma is analogous to the Louisiana and Kansas laws relied upon in *Belanger* and *Bergeson*. Based on the Court's review, under Oklahoma law, a supersedeas bond "merely prevent[s] the prevailing party in litigation from seizing and selling his opponent's property to satisfy the judgment while an appeal of the judgment pends" by staying enforcement of the judgment. *Breeding v. NJH Enter., LLC*, 940 P.2d 502, 505 (Okla. 1997). However, a judgment is not final until the parties extinguish all appeals. *See McCormack v. Town of Granite*, 913 P.2d 282, 284 (Okla. 1996) ("A judgment is not final in the sense that it binds the parties until the losing party has failed properly to perfect an appeal, or until the highest court, whose jurisdiction is invoked by either party, upholds the decision of the trial court."). Further, a bad faith failure to settle claim under Oklahoma law does not accrue for statute of limitations purposes "until the underlying judgment becomes final and non-appealable" because "the injury is not certain . . . until [the underlying judgment] is affirmed and mandated." *Morgan v. State Farm Mut. Auto. Ins. Co.*, 488 P.3d 743, 748 (Okla. 2021). Therefore, while Starr's failure to post the supersedeas bond may allow Spitz to execute the excess judgment against Aguilar and RTI, the judgment is still subject to appeal and therefore is not final.

As a result, Spitz's claims regarding Starr's failure to settle will only be ripe for adjudication after the parties exhaust the appeals of the Underlying Lawsuit. Under Illinois law, Spitz's failure to settle claims are contingent on Aguilar and RTI's personal liability in the Underlying Lawsuit. *See Haddick*, 198 Ill. 2d at 417 (explaining that a bad faith refusal claim does not arise until the insured is exposed to personal liability). Because a reversal of the judgment in excess of the policy limit would erase that liability, any decision regarding the claims at this time would be merely advisory. *See W. Side Salvage*, 2014 WL 12768921, at *4 ("Any judgment in the instant case would take on the character of an advisory opinion, raising the specter of unnecessary and premature adjudication of an abstract disagreement. . . . The underlying litigation is not over, this action is not ripe, and [the insurer's] Motion to Dismiss will be granted."); *Dennerline*, 2006 WL 8446411, at *2 ("Because the [underlying] case is still pending and no judgment has been entered, the [insured] cannot show actual damages at this time for their claim regarding the failure to settle that case. The claim is not yet ripe and, therefore, it must be dismissed."). As a result, the Court dismisses Spitz's failure to settle claims without prejudice.

## II. Section 155 Claim

Next, Starr argues that the Court should dismiss Spitz's Section 155 claim with prejudice because Section 155 does not apply to failure to settle claims. In response, Spitz asserts that: (1) breaching the duty to settle in good faith is an example of potentially vexatious and unreasonable insurer behavior covered by Section 155 and (2) the complaint alleges misconduct other than Starr's failure to settle that also constitute a sufficient claim for relief under Section 155. Section 155 provides "an extracontractual remedy to policy-holders whose insurer's refusal

to recognize liability and pay a claim under a policy is vexatious and unreasonable." *Phillips*,

714 F.3d at 1023 (quoting *Cramer*, 174 Ill. 2d at 519). In relevant part, the statute states:

> In any action by or against a company wherein there is in issue the
> liability of a company on a policy or policies of insurance or the
> amount of the loss payable thereunder, or for an unreasonable
> delay in settling a claim, and it appears to the court that such action
> or delay is vexatious and unreasonable, the court may allow as part
> of the taxable costs in the action reasonable attorney fees, other
> costs, plus [additional penalties].

215 Ill. Comp. Stat. 5/155. The statute "provides a remedy to 'insureds who encounter

unnecessary difficulties resulting from an insurance company's unreasonable and vexatious

refusal to honor its contract with the insured.'" *Dental Experts, LLC v. Mass. Bay Ins. Co.*, No.

20 C 5887, 2021 WL 1722781, at *5 (N.D. Ill. May 1, 2021) (citation omitted). Accordingly,

Section 155 does not cover claims for breach of the duty to settle unless the policy "specifically

define[s] the liability insurer's duty when responding to settlement offers;" if not, the claims do

not arise under the policy but instead, arise under a separate and independent tort action.

*Cramer*, 174 Ill. 2d at 525–27; *see Westchester Fire Ins. Co. v. Gen. Star Indem. Co.*, 183 F.3d

578, 586 (7th Cir. 1999) (upholding district court's denial of damages under Section 155 because

the bad faith failure to settle claim "sounded in tort" and therefore it was not "an action 'on the

policy' that would entitle [the insured] to attorney's fees under [Section 155]" (citing *Cramer*,

174 Ill. 2d at 523)); *Bashaw v. Am. Fam. Mut. Ins. Co.*, No. 05 C 4014, 2006 WL 3591318, at *9

(N.D. Ill. Dec. 8, 2006) (holding that Section "155 does not apply to common law claims for

breach of the duty to settle").

Spitz fails to allege that Aguilar and RTI's policy with Starr sufficiently defined Starr's

obligations with respect to settlement negotiations with a third party. Therefore, as pleaded,

Spitz's allegations regarding Starr's failure to settle sound in tort and cannot form the basis of an

action under Section 155.  Further, the cases Spitz cites to support that Section 155 can include failure to settle claims are inapposite.  *See Shell Oil Co. v. AC&S, Inc.*, 271 Ill. App. 3d 898, 909 (1995) (holding that an insurer was liable under Section 155 for vexatiously and unreasonably failing to provide a legal defense for an insured where trial court found that the policy required it to); *Rogers Cartage Co. v. Travelers Indem. Co.*, 2018 IL App (5th) 160098, ¶ 96 (upholding award of damages under Section 155 because the insurer "threatened to deny coverage if the case was settled or negotiations continued and then filed a lawsuit in a separate county seeking a declaration of no coverage").

However, Spitz's complaint contains other conclusory allegations regarding Starr's conduct which could potentially form the basis of a Section 155 claim if supplemented with additional factual allegations, including how Starr's conduct violated the policy.  *See, e.g.*, *9557, LLC & River W. Meeting Assoc., Inc. v. Travelers Indem. Co. of Conn.*, No. 15-cv-10882, 2016 WL 464276, at *3 (N.D. Ill. Feb. 8, 2016) ("Simply pleading that [the defendant] knowingly and intentionally refused to provide insurance coverage and that [the defendant's] refusal 'was and continues to be vexatious and unreasonable,' without some modicum of factual support, is insufficient to plausibly suggest that [the plaintiff] is entitled to relief under the statute." (alterations in original) (citation omitted)).  Because Spitz has failed to allege how Starr's conduct violated the policy, the Court cannot reasonably infer from the complaint that Starr's conduct entitles Spitz to relief under Section 155.  *See Westchester*, 183 F.3d at 586 (explaining that Section 155 "presupposes an action on the policy" (citation omitted)).  Therefore, the Court also dismisses the Section 155 claim without prejudice.  *Cf. Edwards v. Depositors Ins. Co.*, No. 20-cv-1074, 2021 WL 25360, at *5 (S.D. Ill. Jan. 4, 2021)  (dismissing Section 155 claim

without prejudice under Rule 12(b)(6) where the complaint did not allege sufficient facts to explain why the insurer denied the claim).

## CONCLUSION

For the foregoing reasons, the Court grants Starr's motion to dismiss [8].  The Court dismisses the complaint without prejudice.

Dated: September 2, 2021

SARA L. ELLIS
United States District Judge